```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND

                                 :
CHARLES FALLER, III,
ET AL.,                          :

     v.                          :    Civil Action No. DKC 09-0889

CHARLES FALLER JR.,              :
ET AL.
                                 :
```

**MEMORANDUM OPINION**

Although many motions are presently pending and ready for resolution in this breach of contract case and others are in the process of being briefed, only three motions will be resolved in this opinion: (1) Plaintiffs' motion to dismiss count II of Defendants' counterclaim (Paper 44); (2) Defendants' motion to dismiss counts III and IV of the amended complaint (Paper 46); and (3) Plaintiffs' motion for leave to file a surreply (Paper 52). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.

For the reasons that follow, Defendants' motion to dismiss counts III and IV will be granted; Plaintiffs' motion to dismiss count II of the counterclaim will be granted; and Plaintiffs' motion to file a surreply will be granted.

**I.   Background**

   **A.   Factual Background**

Primary Plaintiff and Defendant in this case are son and father, respectively, and are joined in the suit by their wives. This case involves an alleged breach of contract concerning one of many family businesses that the father and son jointly own and manage. Defendant Charles S. Faller, Jr. ("CSF Jr.") founded the Faller Construction Company, Inc. in March 1962. Faller Construction is a commercial and residential construction company based in Rockville, Maryland. Plaintiff Charles S. Faller III ("CSF III") is one of CSF, Jr.'s six children. He was responsible for identifying and acquiring business opportunities for the Faller family during the 1980's and 1990's. He has also helped to oversee the operation, oversight and management of the Faller family's real estate and business interests, and has had responsibility for day-to-day operations. (Paper 42 ¶ 13).

Beginning in the 1980s, the Faller family began to undertake multi-generational tax planning efforts, forming several trusts for the children and grandchildren. (*Id.* at ¶ 18; Paper 45 ¶ 18). CSF III was appointed trustee for the various trusts created for the benefit of his five siblings and their children. (*Id.* at ¶ 19; Paper 45 ¶ 18). There are several Faller companies that are involved in this case: Faller

Companies, LLC, Faller Family LLC, and FFTM I Limited Partnership.

The Faller Companies, LLC ("Faller Companies") is a Florida company organized by CSF Jr. on August 2, 2005.  Its principal office is on Randolph Road in Rockville, Maryland.  The present membership interests are: Mr. & Mrs. Faller Jr., 50%; CSF III, .10%; C&C Faller Family, LLC, 49.90%. (C&C Faller Family, LLC is a company owned entirely by CSF III, his wife, and their children.)  A dispute exists as to whether CSF III is the President of Faller Companies. (Paper 42 ¶¶ 22-25, Paper 45 ¶¶ 22-25).

Faller Family, LLC ("Faller Family") is a Florida company organized on April 19, 2001 by CSF Jr. It is a holding company for real estate assets and other wealth accumulated by the Fallers. (Paper 42 ¶ 29; Paper 45 ¶ 29).  The present membership interests are divided among several trusts (11% each for five children), 11% by CSF III and his wife, 1% each held by each trust established for the Fallers' grandchildren, and the remaining 26% held by Mr. and Mrs. Faller Jr. (Paper 42 ¶ 30; Paper 45 ¶ 30).

FFTM I Limited Partnership ("FFTM I") is a Maryland partnership organized on November 28, 1994 by CSF, Jr.  Its principal office is on Randolph Road in Rockville, Maryland.  It serves as a single-asset holding company for a piece of property

in Clarksburg, Maryland.  The general and limited partners are: Mr. and Mrs. Faller Jr. (1% interest as general partners); CSF III (.5% interest as a general partner); and Faller Companies (93.5% interest as limited partner).  CSF III and his wife also maintain 5% interest as limited partners.  (Paper 42 ¶¶ 32-35; Paper 45 ¶¶ 32-35).

The 93.5% interest held in FFTM I by Faller Companies was purchased from Faller Family on December 30, 2005 for $45,500,000.00.  A promissory note was issued by Faller Companies for the benefit of Faller Family, bearing interest of 4.8% annually.  (Paper 42 ¶ 35; Paper 45 ¶ 35).  The general partners alone are to manage the business.  (Paper 42 ¶ 38; Paper 45 ¶ 38). The note matures on December 31, 2035 and the transaction establishes a stream of income to Faller Family that benefits the Fallers' children and grandchildren. (Paper 42 ¶¶ 36-37; Paper 45 ¶¶ 36-37).

In 1985, CSF III identified a piece of property in Clarksburg, Maryland that he believed would be a good investment.  CSF Jr. and CSF III formed the Old Clarksburg Limited Partnership through which they acquired the property in 1985 for $500,000.00.  The Limited Partnership conveyed the property to FFTM I on November 28, 1994 for $2,247,433.00.  (Paper 42 ¶ 43; Paper 45 ¶ 43).  FFTM I then undertook to develop the property over many years.  This development was one

4

of the more significant and long-term projects the Faller family had undertaken.  FFTM I sold the Clarksburg property to Toll Bros., a third-party purchaser, on August 8, 2007 for $79,431,365.00.  (Paper 42 ¶ 46; Paper 45 ¶ 46).  As of December 31, 2007, FFTM I had cash on hand totaling $78,456,988.00. (Paper 42 ¶ 48).

This lawsuit focuses on events that took place after the sale of the property.  CSF III alleges that after the sale, because the tax liability would be so high, CSF Jr. agreed to make a distribution and to pay for the taxes from the proceeds of the sale.  (Paper 42 ¶ 49).  Soon after, CSF Jr. told his son that he wished to transfer all of the sale proceeds to Faller Companies and then roll Faller Companies into Faller Family, disregarding the 5% limited partnership interest in FFTM I held by CSF III and his wife.  (Paper 42 ¶ 52).  CSF Jr. agreed to allow his son to receive an arbitrary amount from FFTM I of $2.5 million, as opposed to a 5% pro rata share.  (Paper 42 ¶ 53).

Soon thereafter, CSF Jr. changed his mind and announced he would not approve any distribution.  He agreed only to loan $1 million to his son, though he also agreed to make a distribution at the end of 2008 if the funds had not been reinvested.  (Paper 42 ¶¶ 54-55).  As of September 2008, FFTM I had $60 million in cash on hand.

5

At the end of 2008, CSF III believed that CSJ Jr. would not make a distribution. Therefore, he caused several distributions to be made. (Paper 42 ¶¶ 58-9). He funded the repayment of loans owed by FFTM to CSF Jr. and Faller Families (over $3 million total), he allotted himself a disbursement based on his and his wife's 5% limited partnership interest ($3.9 million) and then used those funds to pay back his $1 million loan from FFTM I. (Paper 42 ¶ 59). The controller of FFTM I recorded the December 2008 distributions in the ordinary course.

After he learned of CSF III's disbursements, CSF Jr. demanded that CSF III repay the $3.9 million, though he believed the other payments were appropriate. (Paper 42 ¶¶ 59-60; Paper 45 ¶¶ 59-60). He also refused to make a distribution to satisfy the tax liability from the sale of the Clarksburg property which CSF III believed was required. (Paper 42 ¶¶ 61-62; Paper 45 ¶ 61).

CSF III alleges that because of the distributions that he made, CSF Jr. locked him out of the Rockville office headquarters, and withheld information on the partnership and operating agreements of FFTM I, Faller Family, and Faller Companies from CSF III and his wife. (Paper 42 ¶¶ 62-64). CSF III also alleges that CSF Jr. attempted to extort and extract concessions from him, including the forfeiture of business interests.

6

On January 26, 2009, CSF Jr. and CSF III met to work out their disagreements. According to CSF III, they worked out a settlement in which CSF Jr. agreed to allow CSF III to retain the $3.9 million disbursement, to receive a distribution to pay his taxes, to return to the Rockville offices, and to have access to organizational documents. In exchange, CSF III agreed to have his name removed as an authorized signatory from certain FFTM I bank accounts. (Paper 90, at 13). This agreement eventually broke down, and there is some dispute as to how much of the agreement was actually performed.

During the summer of 2009, after the start of this lawsuit, several additional business transactions occurred. On August 21, 2009, CSF Jr. directed that FFTM I make a $46.5 million loan to Faller Companies, which Faller Companies then used to prepay its obligation to Faller Family. CSF Jr. also arranged for Faller Family to purchase a property called the "Santa Barbara II," which was listed as one of FFTM I's acquisitions. There is a question as to whether the property sold for less than it was worth. These final two transactions are the subject of a pending arbitration action.

**B.   Procedural Posture**

CSF III filed an original complaint in the Circuit Court for Montgomery County, Maryland. That complaint was removed to federal court on April 8, 2009. (Paper 1). Defendant CSF Jr.

filed an answer and counterclaim on April 21, 2009. (Paper 29). After the court granted leave, Plaintiffs filed an amended complaint on May 8, 2009 (Paper 42), and Defendants provided an amended answer and counterclaim on May 26, 2009. (Paper 45).

CSF III brings four causes of action against defendants: (1) declaratory relief to determine and resolve the controversy among the parties; (2) breach of partnership agreement; (3) breach of fiduciary duty of care; and (4) breach of statutory duty of good faith and fair dealing.

CSF Jr.'s answer denies the charges, alleges that CSF III took an unauthorized distribution of $2,906,204, and brings two counterclaims: (1) breach of contract and (2) expulsion by judicial determination. (Paper 45, at 16-17).

**II. Motions**

    **A.  Motion to Dismiss Counts III and IV of the Amended Complaint[1]**

Defendants have moved to dismiss counts III and IV of Plaintiffs' amended complaint on the basis that Plaintiffs do not state a claim for either count. Defendants contend that "no set of facts could sustain Plaintiffs' breach of fiduciary claim in this jurisdiction because the cause of action does not exist"

---

[1] While arguably merely restating the position espoused in its opposition to the motion to dismiss, Plaintiffs' proposed surreply has been read and considered. Defendants did not object to its filing, so Plaintiffs' motion to file a surreply (Paper 52) is GRANTED.

8

(Paper 46, at 2), and that "[s]imilarly, Maryland courts do not recognize an independent cause of action for breach of the duty of good faith and fair dealing." (Paper 46, at 3). Defendants argue that both state and federal courts in Maryland have acknowledged the lack of a separate breach of fiduciary duty cause of action and a lack of a separate cause of action for breach of good faith and fair dealing, and that courts have dismissed these claims. Plaintiffs maintain that the Corporations and Associations Article of the Maryland Code expressly grants partners the right to maintain an action against another partner for legal relief to enforce a statutory claim for breach of fiduciary duty and good faith and fair dealing. (Paper 50, at 1).

**1.   Standard of Review**

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).   Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of

entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999)(citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, No.09-1908, 2009 WL 4348830 (4th Cir. Dec. 2, 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining

whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### 2. Breach of Fiduciary Duty (Count III)

Defendants assert that Maryland does not recognize a "'separate tort action for breach of fiduciary duty.'" (Paper 46, at 2)(quoting *Int'l Broth. of Teamsters v. Willis Corroon Corp. of Md.*, 369 Md. 724, 728 n. 1 (2002)). Plaintiffs maintain that Md. Code Ann., Corps. & Ass'ns § 9A-404(c), a portion of the Maryland Revised Uniform Partnership Act ("MRUPA"), requires that partners owe a duty of care that is a fiduciary duty. (Paper 50, at 6). Plaintiffs argue that Md. Code Ann., Corps. & Ass'ns § 9A-405(b)(2) creates a "mechanism by which a partner may ask a court to enforce" the fiduciary duty. (*Id.*) That section states:

> A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to . . . .
> (2) Enforce the partner's rights under this title . . . .

Md. Code Ann., Corps. & Ass'ns § 9A-405(b)(2). The rights that can be enforced, Plaintiffs argue, include a fiduciary duty of care under Md. Code Ann., Corps. & Ass'ns § 9A-404(c).

In its 1997 ruling in *Kann v. Kann*, the Maryland Court of Appeals held that

> there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries. This does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion.

344 Md. 689, 713 (1997). Maryland state and federal courts have clarified this ruling to mean that a breach of fiduciary duty can give rise to a cause of action, but it cannot be an independent cause of action. "However, 'a careful reading of [Kann] merely leads to the conclusion that a breach of fiduciary duty would continue to be part of other causes of action.'" *G.M. Pusey and Associates, Inc. v. Britt/Paulk Insurance Agency, Inc.*, 2008 WL 2003747 (D.Md. 2008)(quoting *Swedish Civ. Aviation Admin. v. Project Mgmt. Enters.*, 190 F.Supp.2d 785, 801 (D.Md. 2002)). *See McGovern v. Deutsche Post Global Mail, Ltd.*, 2004 WL 1764088 (D.Md. 2004)("[A] breach of fiduciary duty can give rise to a cause of action – that is, it can be a component of a cause of action – but it cannot be a cause of action standing alone."). In a case where other related claims exist, it may be dismissed and "subsumed" into another cause of action. For instance, in *Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787 (D.Md. 1998), the plaintiffs alleged thirteen counts, including breach of fiduciary duty, breach of contract, common law fraud, etc. In that case, the court dismissed the claim for breach of

fiduciary duty finding that "Maryland recognizes no 'universal or omnibus tort for the redress of breach of fiduciary duty,' at least in a situation where other remedies exist." *Kerby*, 992 F.Supp. at 803 (quoting *Kann* 344 Md. at 713).

In Maryland, fiduciary duties are recognized and can be enforced, but not through independent actions. "Maryland does not recognize a . . . separate tort cause of action for breach of fiduciary duty, and instead treats breach of fiduciary duty as a claim for the tort of negligence." 17 Maryland Law Encyclopedia Partnership § 53 (citing *Vinogradova v. Suntrust Bank, Inc.*, 162 Md.App. 495 (2005)). "Plaintiffs have a variety of alternative remedies, including the breach of contract claim, in which the breach of fiduciary duty may be a part." *G.M. Pusey*, 2008 WL 2003747 at *6.

   **3.   Breach of Good Faith and Fair Dealing (Count IV)**

The duty of good faith and fair dealing "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Swedish Civ. Aviation Admin*, 190 F. Supp. 2d at 794, (quoting *Parker v. The Columbia Bank,* 91 Md.App. 346, 366 (1992) (internal quotations omitted)). Maryland recognizes "an imposition of the duty of good faith and fair dealing in the *performance of a contract.*" *G.M. Pusey*, 2008 WL 2003747 at *7.

Maryland courts have held, however, that "there is no independent cause of action at law in Maryland for breach of the implied covenant of good faith and fair dealing." *Mount Vernon Props., LLC v. Branch Banking & Trust Co.,* 170 Md.App. 457, (2006). This court has also recognized that principle, holding that an action for a breach of good faith is "merely part of an action for breach of contract." *Swedish Civ. Aviation Admin* at 794 (citing *Howard Oaks, Inc. v. Maryland Nat'l Bank*, 810 F.Supp. 674, 677 (D.Md. 1993)).

Because count II in Plaintiffs' amended complaint already states a claim for breach of contract, count IV does not state a different claim and will be dismissed.

**B.  Motion to Dismiss Count II of Defendants' Counterclaim**

In their counterclaim, Defendants ask the court to "remove Counter-Defendant as a general partner of FFTM I under the authority of Md. Code Ann. § 9A-601(5)(iii) (Corps. & Ass'ns), and convert his interest into a limited partnership interest in FFTM I." (Paper 45 ¶ 25). Plaintiffs move to dismiss this count pursuant to Fed.R.Civ.P. 12(b)(6) arguing that "defendants have expressly requested [an] unauthorized form of relief." (Paper 44, at 5).

The Maryland Code adopts the Revised Uniform Partnership Act 1997 ("RUPA") at Md. Code Ann., Corps. & Ass'ns § 9A and

provides ten events which cause partner dissociation. The Maryland Code provides that

> A partner is dissociated from a partnership upon the occurrence of any of the following events:
>
> (5) On application by the partnership or another partner, the partner's expulsion by judicial determination because:
>
> (iii) The partner engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business in partnership with the partner . . . .

Md. Code Ann., Corps. & Ass'ns § 9A-601(5)(iii). Defendants do not ask the court to expel the partner from the partnership, but rather to convert the partner's general partnership interest in FFTM I into a limited partnership interest. Defendants argue that such a remedy is within the court's power pursuant to Md. Code Ann., Corps. & Ass'ns § 9A-405(b) which reads in relevant part:

> A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to: (1) Enforce the partner's rights under the partnership agreement, . . . ; or (3) Enforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship.

Md. Code Ann., Corps. & Ass'ns § 9A-405. Maryland law has not recognized the right of a court to convert a general partner

interest into a limited partner interest.  Therefore, the court will dismiss count II of Defendants' Counterclaim.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss counts III and IV will be granted.  Plaintiffs' motion to dismiss count II of the counterclaim will be granted, and Plaintiffs' motion for leave to file a surreply will be granted. A separate Order will follow.

```
                              /s/
        DEBORAH K. CHASANOW
        United States District Judge
```