IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHARLES FALLER, III, et al.       :

    v.                              :   Civil Action No. DKC 09-0889

CHARLES FALLER, JR., et al.       :

**MEMORANDUM OPINION**

Many motions are presently pending and ready for resolution in this breach of contract case. The motions that will be addressed in this memorandum opinion are (1) Plaintiffs' motion for leave to file a supplemental complaint (paper 64), (2) Defendants' motions for leave to file supplemental material (papers 100, 107, 141, 148), and (3) Defendants' motion for partial summary judgment (paper 69). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motion for leave to file a supplemental complaint will be granted; Defendants' motions for leave to file supplemental material will be granted; and Defendants' motion for partial summary judgment will be denied.

**I.   Background**

The necessary background was set forth in a prior memorandum opinion (paper 132) and will not be repeated here.

## II. Motion to File Supplemental Complaint

Plaintiffs/Counter-Defendants Charles Faller, III ("CSF III"), and Cindy Faller (together, "Plaintiffs") have moved for leave to file a supplemental complaint pursuant to Fed.R.Civ.P. 15, seeking to add the following events:

> a. Defendant Charles S. Faller, Jr. ("CSF Jr.") has drained FFTM I Ltd. Partnership ("FFTM I") of virtually all of its cash by requiring the partnership to make a $46.5 million "loan" that his lawyer says has a "low likelihood" of being repaid [and] that his controller says will probably have to be written off;
>
> b. CSF Jr. has distributed that $46.5 million in the form of an uncollectible "loan" to one of FFTM I's partners, rather than as part of [a] pro rata distribution to all partners, so that he could evade his obligations to make any distribution of any of the partnership assets to the plaintiffs;
>
> c. CSF Jr. has admitted, at his deposition on September 15, 2009, that, in requiring FFTM I to make an uncollectible "loan" that will probably have to be written off, he favored the interests of another one of [his] businesses (the recipient of the "loan" proceeds) over the interests of FFTM I; and
>
> d. CSF Jr. has, upon information and belief, sold a tract of real property ["the Santa Barbara II Property"], in which FFTM I had an interest, for less than its appraised value, to another business that he controls.

(Paper 64 ¶ 1). Plaintiffs would then assert a new claim for breach of fiduciary duty of loyalty. (Paper 64, at 2). Defendants/Counter-Plaintiffs Charles Faller, Jr. ("CSF Jr."),

2

and L. Jean Faller (together, "Defendants") oppose the motion, arguing that allowing a supplemental complaint at this point is futile and untimely.

Motions to file supplemental complaints are governed by Fed.R.Civ.P. 15(d), which provides that:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

The United States Court of Appeals for the Fourth Circuit has found that

> [v]arious courts have concluded that 'requiring [a] plaintiff to go through the needless formality and expense of instituting a new action when events occurring after the original filing indicated he had a right to relief [is] inconsistent with the philosophy of the federal rules.' 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1505 (2d. ed. 1990) (citing cases).

*Franks v. Ross*, 313 F.3d 184, 198 (4th Cir. 2002). Furthermore,

> standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where "good reason exists . . . , such as prejudice to defendants."

*Franks* at 198 n.15 (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)).

The information related to the Santa Barbara II Property and "loan" may prove relevant to the ongoing matter, although arbitration may ultimately determine the outcome of that specific dispute. Defendants will not be prejudiced by the addition of a cause of action by Plaintiffs, nor by the new information. Therefore, the motion for leave to file a supplemental complaint will be granted.

**III. Motions to File Supplemental Materials**

Defendants also seek leave to file supplemental materials, which they assert are relevant to other pending motions. Specifically, they wish to file a demand for arbitration issued to Plaintiffs on December 21, 2009 (paper 100); Plaintiffs' answer and counterclaim in the arbitration proceeding (paper 107); Plaintiffs' amended counterclaim and other materials submitted in arbitration, and the arbitrator's ruling concerning the refusal of CSF Jr. to produce an appraisal of the Santa Barbara II Property (paper 141); and the arbitrator's interim award (paper 148). The arbitration proceeding was initiated by Defendants because the governing documents for Santa Barbara, LLC, the company that owns the Santa Barbara II Property, require that disputes be settled through arbitration. (Paper

71, Attach. 1). Defendants contend that the arbitration filings "demonstrate conclusively that the propriety of [the allegedly dishonest actions] by Defendants will be determined in the arbitration proceeding and therefore cannot be determined in this case." (Paper 112, at 1-2).

Although Plaintiffs would like to introduce allegations and facts regarding the sale of the Santa Barbara II Property, they oppose Defendants' motions for leave to file supplemental material. They argue that the selling of the property and the "loan" are relevant to the instant case regardless of whether an arbitration matter is ongoing. Plaintiffs believe that an appraisal valuing the Santa Barbara II Property at a price higher than that for which it sold demonstrates that CSF Jr. favored one of his businesses, Faller Family, LLC, to the detriment of another, FFTM I; that the sale for less than full value was largely motivated by CSF Jr.'s animus toward CSF III; and that the same animus underlies the actions set forth in their amended complaint (*i.e.*, withholding the distribution, etc.).

No prejudice results from the court being apprised of the ongoing arbitration proceedings. As noted above, it remains to be seen what, if any, impact those proceedings ultimately will have on this action. Thus, the motions to file supplemental material will be granted.

**IV. Motion for Partial Summary Judgment**

Defendants move for summary judgment on two issues. First, they ask the court to find that FFTM I was not required to distribute the profits from the sale of the Clarksburg Property to the FFTM I partners. Additionally, they ask for judgment on Count I of their counterclaim, requiring Plaintiffs to restore to FFTM I $2,960,204.60 of the funds CSF III distributed to himself and to reinstate CSF III's $1 million debt.

**A. Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S.

372, 378 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

   **B.  Arguments**

Defendants first seek a judgment that Plaintiffs were not entitled to a distribution from FFTM I. They advance three arguments in support of this claim: 1) that the partnership agreement itself does not require that a distribution be made; 2) that any alleged promise that CSF Jr. made to CSF III is

7

unenforceable; and 3) that the agreement expressly disallows liability if a partner has not engaged in actual fraud, gross negligence, or dishonest conduct.

In support of their first argument, Defendants offer CSF III's deposition testimony, in which he states that he is not "sure that there is something in the particular writing of the partnership agreement" requiring that a distribution be made. (Paper 69, Ex. B, at 10). He adds that there was an "[a]greement of the general partners" to authorize the $3.9 million withdrawal that he took, but there was "no written provision" to that effect. (*Id*. at 12).[1]

Defendants maintain that the promise or agreement upon which CSF III bases his claim for distribution is not enforceable. According to Defendants, any such promise cannot be considered an oral contract because there was no consideration; instead, they suggest this was merely a statement of CSF Jr.'s intent at that time to make a distribution, but that he subsequently changed his mind. Defendants further contend that CSF III cannot argue promissory estoppel because there was no detrimental reliance on the alleged promise. They

---

[1] To clarify, the "$3.9 million withdrawal" consists of "$2,906,204.60 . . . in the form of a cash transfer and $1.0 million . . . in the form of a 'repayment' of the $1.0 million that [CSF III] had received from FFTM I in February 2008 in the form of a loan." (Paper 69, at 6).

8

observe that when asked at his deposition what, if anything, he did in reliance on the alleged agreement, CSF III testified only that he "[c]reated spreadsheets showing this is how the distributions are going to be made." (*Id*. at 84).

Finally, Defendants argue that the partnership agreement expressly limits the circumstances under which a partner may be held liable:

> No partner shall be liable to any other partner or to the Partnership by reason of his actions in connection with the Partnership, except in the case of actual fraud, gross negligence or dishonest conduct.

(Paper 69, Ex. D, at § XIV). According to Defendants, because CSF III cannot demonstrate that they engaged in actual fraud, gross negligence, or dishonest conduct, they cannot be liable to Plaintiffs for their decision to maintain investment of FFTM I's funds instead of authorizing a distribution.

Plaintiffs argue that a reasonable jury could find that an enforceable agreement existed regarding the distribution. They assert that their claim does not rest solely on the oral agreement between CSF Jr. and CSF III that Defendants contend is unenforceable. Rather, they advance a number of facts, many of which are disputed or characterized differently by Defendants, to argue that the distribution was an issue that had been long-settled until CSF Jr. changed his mind in late 2008. Evidence

9

that Plaintiffs point to includes 1) a written agreement by which CSF III obtained a five percent "profits interest" in 2002; 2) a family meeting in December 2005 at which CSF Jr. reiterated his commitment that CSF III would receive the five percent interest; 3) the design and implementation of a plan to manage the Faller family's wealth, which included distributing the proceeds from the sale of the Clarksburg property to FFTM I's general and limited partners; 4) the February 2008 agreement that FFTM I would distribute the proceeds that it had not reinvested; and 5) a January 26, 2009, agreement between CSF III and CSF Jr.  (Paper 90, at 21).

Plaintiffs argue that a jury could conclude that these agreements were more than mere expressions of present intent, but were in fact enforceable under the FFTM I partnership agreement, which states that "all decisions made for and on behalf of the Partnership by a majority of interests of the general partners shall be binding upon the Partnership."  (Paper 90, at 22 (quoting the agreement at § V)).  In support of this contention, Plaintiffs offer CSF III's declaration that "[h]istorically, it has been the long-standing practice of the general partners of FFTM I to implement decisions without reducing them to writing."  (Paper 90, Ex. A, at ¶ 46).

Defendants' motion for summary judgment also requests a finding, pursuant to the first count of their counterclaim, that

CSF III was not authorized to distribute FFTM I funds to himself and his wife or to cancel a loan of $1 million. (Paper 69, at 14). Defendants argue that taking this money constitutes "dishonest conduct," thus Defendants are entitled to a judgment requiring CSF III to return all funds.

Plaintiffs maintain that genuine issues of material fact preclude the entry of summary judgment on count I of the counterclaim, reiterating much of the evidence noted above. They further contend that the actions taken by CSF Jr. and CSF III in January 2009 fulfill the requirements for an accord and satisfaction. Specifically, Plaintiffs assert that a dispute arose as to the extent of CSF III's liability prior to that time; that, upon learning of CSF III's receipt of the $2.9 million distribution and retention of the $1 million loan, CSF Jr. attempted to move millions of dollars into personal accounts, locked his son out of the family's offices, and prohibited the partnership's attorneys from providing him with organizational documents; that CSF Jr. subsequently permitted CSF III to retain the $3.9 million, even though he believed he was entitled to nothing; and, finally, that "the agreement was performed when CSF III removed his name from the FFTM I bank accounts and when CSF Jr. allowed CSF III to return to work and permitted the attorneys to provide him with organizational documents." (Paper 90, at 31). Thus, according to Defendants,

11

"the record reflects genuine disputes of material fact concerning whether CSF [Jr.] agreed to permit his son to receive five percent of the profits of the Clarksburg sale, including whether he agreed to permit his son to receive those funds at the meeting that occurred on January 26, 2009." (*Id.*).

Plaintiffs further contend that Defendants' motion is procedurally improper insofar as it seeks "summary judgment on two legal 'issues' that would not fully dispose of any of plaintiffs' claims even if they were resolved in defendants' favor." (*Id.* at 36). Finally, Plaintiffs maintain that because discovery is not yet complete the issues are not yet ripe for adjudication, and because they have not yet filed their supplemental complaint, the motion should be denied as moot.

**C. Analysis**

Defendants' motion for partial summary judgment is essentially a hybrid motion. First, Defendants ask for a legal determination that FFTM I was not required to make a distribution to partners from the sale of the Clarksburg Property. This argument appears to relate to Plaintiffs' amended complaint, which seeks, *inter alia*, a declaratory judgment that a distribution was required. Defendants also seek summary judgment as to an actual cause of action, namely, the first count of their counterclaim. Each of these claims will be analyzed in turn.

### 1. Plaintiffs' Amended Complaint

As noted, *supra*, the court will grant Plaintiffs' motion to file a supplemental complaint. This addition, however, should not abrogate the motion for summary judgment, as Plaintiffs suggest, because it adds a cause of action, rather than amending those that already exist. Plaintiffs' argument that the court should deny Defendants' motion for partial summary judgment because it seeks judgment as to issues, not claims, is more persuasive. In fact, Defendants' failure to respond to this argument is fatal to the determination they seek.

Generally, "[u]nder Rule 56, a party is not entitled to summary judgment if the judgment would not be dispositive of an entire claim." *Classen Immunotherapies, Inc. v. King Pharmaceuticals, Inc.*, 403 F.Supp.2d 451, 456 (D.Md. 2005) (citing *Felix v. Sun Microsystems*, Civ. No. JFM-03-1304, 2004 WL 911303 (D.Md. Apr. 12, 2004)). Rule 56(d) applies when an entire action is not resolved on the motion for summary judgment; it does not authorize a separate motion to establish that only certain facts are true. *Felix*, 2004 WL 911303, at *7.

In the first count of their amended complaint, Plaintiffs seek a declaratory judgment that

> [Defendants] are required and legally obligated (i) to distribute all funds from the sale of the Clarksburg Property to the general and limited partners in accordance with their respective interests in FFTM I or

> to distribute such funds as are necessary to
> pay tax liabilities resulting [from] the
> sale of partnership property, and (ii) to
> provide CSF III with access to the books,
> records, financial information, bank account
> records, Controller, and office of FFTM I in
> accordance with the Partnership Agreement[.]

(Paper 42, at 21). As to the relief sought in section (i) of the quoted language, Defendants' motion seeks a slightly different legal conclusion that obscures the full extent of the declaration sought in the amended complaint. Moreover, Defendants have not addressed the additional relief sought by Plaintiffs in section (ii). The issue Defendants ask the court to determine also has bearing on the second count of the amended complaint, in which Plaintiffs assert a cause of action for breach of contract. Again, with respect to this count, Defendants' motion appears to seek a legal determination as to only a portion of the claim. Furthermore, it is clear that there are material disputes of fact that preclude a grant of summary judgment in favor of Defendants on either of the two counts of the amended complaint. Accordingly, insofar as Defendants move for summary judgment as to the claims set forth in Plaintiffs' amended complaint, that motion will be denied.

### 2. Count I of Defendants' Counterclaim

Defendants' argument with respect to the first count of its counterclaim appears to be contingent upon the success of their argument regarding Plaintiffs' amended complaint: Because they

believe they were not required to make a distribution, they contend that CSF III's taking of a distribution constitutes a breach of the partnership agreement. Thus, the same reasons precluding a grant of summary judgment on the issue of whether there was an enforceable agreement authorizing the distribution also preclude the requested relief with respect to the first count of Defendants' counterclaim.

Moreover, genuine issues of material facts exist regarding the January 26, 2009, meeting and actions taken thereafter by CSF Jr. and CSF III. CSF III argues that the meeting and subsequent actions resulted in an accord and satisfaction. The Court of Special Appeals of Maryland has clearly delineated the elements of an accord and satisfaction:

> Accord and satisfaction is an affirmative defense. To prevail, the defendant must prove: (1) that a dispute arose between the parties about the existence or extent of liability; (2) that, after the dispute arose, the parties entered into an agreement to compromise and settle the dispute by the payment by one party of a sum greater than that which he admits he owes and the acceptance by the other party of a sum less than that which he claims is due; and (3) that the parties performed that agreement.

*Wickman v. Kane*, 136 Md.App. 554, 561, *cert. denied*, 364 Md. 462 (2001). Here, several issues of material fact remain as to whether the January meeting resulted in an agreement, and to

what extent that agreement was performed, or satisfied. Accordingly, summary judgment will be denied on this claim.

V. **Conclusion**

For the foregoing reasons, Plaintiffs' motion to file a supplemental complaint will be granted; Defendants' motions for leave to file supplemental material will be granted; and Defendants' motion for partial summary judgment will be denied. A separate order will follow.

```
                              /s/
         DEBORAH K. CHASANOW
         United States District Judge
```